MELVIN COOPER AND SELMA COOPER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent; MELVIN COOPER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Cooper v. Commissioner
Docket Nos. 28933-82, 16748-83.
United States Tax Court
T.C. Memo 1987-303; 1987 Tax Ct. Memo LEXIS 303; 53 T.C.M. (CCH) 1162; T.C.M. (RIA) 87303; June 22, 1987. Melvin Cooper, pro se. Michael A. Menillo, for the respondent. WRIGHT
MEMORANDUM FINDINGS OF FACT AND OPINION WRIGHT, Judge: In these consolidated cases, respondent determined deficiencies and additions to tax under section 6653(b) [1] as follows: Additions to Tax
Year
Deficiency
Sec. 6653(b)
1977
$126,793
$63,397
1978
284,869
142,435
1979
480,155
*304 The issues for our consideration are: (1) whether petitioners had unreported income from prostitution and a mail order business during the taxable years 1977 and 1978; (2) whether petitioner Melvin Cooper had unreported income from prostitution for taxable year 1979; (3) whether petitioner Melvin Cooper is liable for additions to tax for fraud under section 6653(b) for taxable years 1977 and 1978; and (4) whether petitioners may take a deduction with respect to contributions made to Selma Cooper's Individual Retirement Account (IRA) during taxable years 1977 and 1978. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits have been incorporated herein by this reference. Petitioners Melvin Cooper and Selma Cooper are husband and wife. At the time the petitions herein were filed, petitioner Melvin Cooper resided at Allenwood Federal Prison Camp, Montgomery, Pennsylvania. Petitioner *305 Selma Cooper resided at Brooklyn, New York, at the time the petition was filed in docket No. 28933-82. Petitioners filed joint Federal income tax returns for taxable years 1977 and 1978 with the Office of the Internal Revenue Service at Holtsville, New York. Respondent has no record of any income tax return having been filed by petitioners for taxable year 1979. During the taxable years in issue, Melvin Cooper (Mr. Cooper) was president and sole owner of Ramit Distributors, Inc. (Ramit), a mail order business specializing in sex aids and sex oriented paraphernalia. [2] Ramit, which was incorporated in May 1972 and received small business corporation status in January 1973, conducted operations at several different locations at New York, New York, during the years in issue. Similarly, during the taxable years in issue, Mr. Cooper also operated houses of prostitution at various locations in New York City. *306 Mr. Cooper employed an accountant to prepare petitioners' 1977 and 1978 income tax returns and furnished the accountant with information to be used in preparing those returns. On their income tax returns for 1977 and 1978, petitioners reported the following items in computing their taxable income: Item
1977
1978
Interest income
$ 881 $1,028 Business income net (husband)
13,546 13,350 Business income net (wife)
10,050 10,100 Rental income
200 40 Income from 1120S [3]
(2,867)
221 Payments to IRA
(3,000)
(3,000)
Adjusted Gross income
18,810 21,739 Itemized deductions
(4,853)
(2,824)
Exemptions
(3,000)
(3,000)
Taxable income
10,957 15,915 In conjunction with a criminal investigation of Mr. Cooper, Special Agent Mark Britt of the Internal Revenue Service began examining the books and records *307 of petitioners in order to determine their 1977 and 1978 income tax liabilities. After conducting interviews with Ramit employees and petitioners' accountant and analyzing Ramit's bank records, as well as postal money orders obtained by subpoena from two New York City post offices, Special Agent Britt determined that petitioners had understated Ramit's gross receipts by $53,991 for 1977 and $50,559 for 1978. These gross receipts consisted of postal money orders payable to Ramit from mail order customers which were cashed by Mr. Cooper or a Ramit employee. These cash receipts were not deposited in Ramit's bank account nor were they reported on either Ramit's or petitioners' income tax returns for 1977 or 1978. Special Agent Britt also examined the records of Mr. Cooper's houses of prostitution. These records, consisting primarily of "trick sheets," were stored at Ramit's offices and seized pursuant to a court-authorized search warrant on December 17, 1979. The trick sheets, which were admitted into evidence in this case, document the activities of each house for each 8-hour shift showing the number of "tricks" by each employee, the amount received for each trick, the telephone *308 expense, other miscellaneous expenses and the net amount received for each shift. Through analysis of these trick sheets, Special Agent Britt determined that petitioners had received income from prostitution in the amounts of $142,070 and $368,801 for 1977 and 1978, respectively. None of these amounts were reported on petitioners' tax returns for those years. Based on his investigation, Special Agent Britt determined petitioners' income tax liabilities for 1977 and 1978 as follows: 1977
1978
Schedule C gross receipts per return [4]
$ 26,000
$ 26,000
Add: Criminal items
Unreported prostitution income
142,070
368,801
Receipts diverted from Ramit
53,991
50,559
Corrected Schedule C gross receipts
$222,061
$445,360
Using the trick sheets obtained from Mr. Cooper's houses of prostitution, Revenue Agent Bruce Thomas determined that petitioner Melvin Cooper had income from prostitution during 1979 in the amount of $708,054. For all the taxable years in issue, *309 respondent's agents determined the reportable income from prostitution by taking the net amount from the trick sheets after deducting each employee's share of the tricks plus the amount paid to the telephone operator and any other miscellaneous expenses shown on the trick sheets. On February 27, 1981, Mr. Cooper pled guilty to filing false individual income tax returns pursuant to section 7206(1) for the taxable years 1977 and 1978. The guilty plea was made with respect to an indictment which charged that Mr. Cooper during the years 1977 and 1978: willfully and knowingly did cause travel in interstate commerce and did use and cause others to use facilities in interstate commerce, including the mail and interstate periodicals, with intent to promote, manage, establish, carry-on and facilitate the promotion, management, establishment and carrying on of an unlawful activity to wit, the ownership and operation of the houses of prostitution listed below, and other houses of prostitution, in violation of the laws of the State of New York: a. Second Floor Rear, 807 Lexington Avenue, New York, New York. b. Fifth Floor, 43 Park Place, New York, New York. c. Second Floor, 411 Park *310 Avenue South, New York, New York. d. Second Floor Rear, 150 East 52nd Street, New York, New York. On April 10, 1981, Mr. Cooper was sentenced to six years in jail. He was released from prison on February 15, 1985. The determinations made by respondent's agents were the basis for the statutory notices of deficiency in these cases. In the notice of deficiency for taxable years 1977 and 1978, issued September 10, 1982, respondent corrected petitioners' undistributed taxable income from Ramit Distributors, Inc. [5] As pertinent here, respondent also disallowed the deductions made to Selma Cooper's IRA because it had not been established that she was employed by Ramit or was self-employed. OPINION Respondent's determination of deficiencies in income tax are presumptively correct and petitioners have *311 the burden of proving that respondent's determinations are erroneous. ; Rule 142(a). Based on the record before us, we conclude that petitioners have failed to meet their burden of proof. First, respondent determined that petitioners derived unreported income from the mail order business known principally as Ramit, owned and operated by Melvin Cooper. Respondent presented testimony and documentation that during the taxable years 1977 and 1978 Ramit received postal money orders as payment for mail order merchandise. Special Agent Britt's uncontradicted testimony demonstrated that the postal money orders were cashed by petitioner Melvin Cooper and that the proceeds were not deposited in Ramit's bank account. Respondent demonstrated at trial that these amounts were not reported by either Ramit or petitioners on their Federal income tax returns. Petitioners did not deny that these amounts were unreported and produced no evidence to establish that respondent's determination was incorrect. Rather, at trial Mr. Cooper argued that the cash received from the postal money orders was used to meet Ramit's payroll expenses. Petitioners, *312 however, did not provide any documentation showing that the cash was used for that purpose. We need not accept self-serving testimony to meet a party's burden of proof without substantiating documentation. , affg. a Memorandum Opinion of this Court. Secondly, at trial respondent produced testimony and documentary evidence (five cartons of trick sheets corresponding to various houses of prostitution owned and operated by Melvin Cooper) attesting to the unreported prostitution income as set forth in the statutory notice. Although petitioners protested the amounts as determined by respondent, specifically by claiming that such amounts did not take into account capital expenditures, they offered no evidence to establish that the amounts as determined by respondent were incorrect. In their petition and their memorandum of law, petitioners assert that the notices of deficiency are erroneous because they were never afforded an audit and that the deficiencies cannot properly be disputed because their books and records are in the hands of the Internal Revenue Service and are not available. Such arguments are without *313 merit. First, the fact that petitioners were not audited and had no administrative hearing does not preclude respondent from issuing a notice of deficiency. This Court generally will not look behind a deficiency notice to examine evidence used or the propriety of respondent's motives or of the administrative policy or procedures involved in making the determinations set out in the notice of deficiency. ; . A notice of deficiency only advises the taxpayer that respondent means to assess him and anything that does this unequivocally is good enough. . Finally, the fact that petitioners' books and records were in respondent's possession also does not serve to relieve petitioners of their burden of proof and their burden of going forward with the evidence. There is nothing in the record which shows that respondent precluded petitioners from using their records in order to prepare for trial. The record indicates, however, that petitioners were given numerous opportunities to provide *314 the documentation showing offsetting expenses but failed to do so. We found the testimony of respondent's agents to be credible and the evidence introduced at trial to be persuasive. Accordingly, we hold that respondent's determination of unreported income for the taxable years in issue is correct. We next turn to the issue of whether petitioner Melvin Cooper should be held liable for the additions to tax for fraud under section 6653(b) for the taxable years 1977 and 1978. The burden is on respondent to show, by clear and convincing evidence, that some part of the payment is due to fraud and that petitioner had a specific purpose to evade a tax believed by him to be due and owing. ; ; sec. 7454(a); Rule 142(b). The existence of fraud is a question of fact to be resolved upon consideration of the entire record. ; , affd. without published opinion ; . *315 Fraud is never presumed, but rather must be established by affirmative evidence. . Respondent may carry his burden on the basis of reasonable inferences to be drawn from the record, but he may not rely on petitioner's failure to carry his burden of proof as to the underlying deficiencies. . Moreover, respondent need only prove that "any part of any underpayment * * * is due to fraud." Sec. 6653(b)(1); . Direct proof of the taxpayer's intent is rarely available; therefore, fraud may be proved by circumstantial evidence. ; The taxpayer's entire course of conduct may establish the requisite fraudulent intent. ;
In the instant case it has been conclusively established that for the taxable years 1977 and 1978, petitioner Melvin Cooper had income which was not reported *316 on his respective Federal income tax returns filed jointly with his wife. Thus, respondent has met his burden with respect to proving the existence of an underpayment for each of the years in issue. We must therefore consider whether any part of the underpayment for each year was due to fraud. For the reasons set forth below, we find that respondent has met his burden of establishing fraud for taxable years 1977 and 1978 by clear and convincing evidence. Petitioner Melvin Cooper failed to report income from sales and prostitution totaling $615,421 for the two years in issue. The majority of this income was derived from an illegal source. Moreover, this is a substantial amount in proportion to the amounts of income reported during 1977 and 1978. Such failure to report substantial amounts of income over a number of years is effective evidence of fraud. , affd. without published opinion . See , affg. a Memorandum Opinion of this Court; ; *317 , affd. per curiam . Mr. Cooper appropriated over $100,000 in postal money orders payable to Ramit for mail order merchandise which he cashed for his own use and enjoyment. Such action evinces a fraudulent intent on the part of Mr. Cooper to prevent respondent from learning of his income. See , affg. a Memorandum Opinion of this Court; . A further indication of fraud is the fact that Mr. Cooper failed to supply complete information about his income and expenses to his tax return preparer. , affg. per curiam ; . Moreover, from the voluminous records introduced at trial, it is clear that Mr. Cooper kept detailed and extensive records with respect to his business operations. Thus, we conclude from these facts that he knew of the underreporting of this income. Knowingly underreporting income on a tax *318 return is in itself a strong indication of fraud. It has been stipulated that Melvin Cooper pled guilty to filing false individual income tax returns pursuant to section 7206(1) for the taxable years 1977 and 1978. Although we recognize that the guilty plea does not collaterally estop petitioner from denying liability for the fraud addition pursuant to section 6653(b), the guilty plea is a fact to be considered in a trial on the merits and this Court has concluded that a conviction under section 7206(1) is evidence of fraudulent intent. . In addition, respondent's agents testified that Mr. Cooper was uncooperative prior to trial in this case. A failure to cooperate with respondent's attempt to determine petitioner's correct tax liability can be a further indicium of fraud. , affg. a Memorandum Opinion of this Court; ; . Accordingly, we conclude that respondent has shown that petitioner Melvin Cooper concealed, *319 mislead or otherwise prevented the collection of Federal income tax due and owing. . We therefore sustain the determined addition to tax for fraud under section 6653(b) with respect to Mr. Cooper for taxable years 1977 and 1978. The final issue for our consideration is whether a deduction should be allowed for contributions made to Selma Cooper's IRA for the taxable years 1977 and 1978. Deductions are a matter of legislative grace and petitioners bear the burden of proving their entitlement to the claimed deductions. ; ; Section 219 and the regulations promulgated thereunder provide for the deduction of an amount equal to the qualified retirement contributions of an individual. These deductions are predicated on the employment or self-employment of the individual and are computed on the amount of the compensation received. Sec. 219(b)(1). Pursuant to the statutory notice, the respondent disallowed the IRA deduction on the ground *320 that it had not been shown that Selma Cooper was employed by Ramit or any other employer or that she was self-employed. Petitioners have offered no evidence to substantiate their claim that Selma Cooper was a Ramit employee nor have they shown that she was self-employed. At trial Mr. Cooper stated that he never offered any of respondent's agents any evidence or documentation that Selma Cooper was working for Ramit and further stated that he would not allow his wife to talk to respondent's agents. Accordingly, we sustain respondent's disallowance of Selma Cooper's IRA deduction for taxable years 1979 and 1978. For the foregoing reasons, Decisions will be entered for the respondent.
Footnotes
1. All section references herein are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue, and all Rule references, unless otherwise noted, are to the Tax Court Rules of Practice and Procedure.↩
2. Ramit Distributors did business under the names of Publishing Company, Better Rubber Products, Feminine Gourmet Products, Heavenly Distributors, Minx Classics, Startime Industries, Inc., Scandia Distributors, Inc., Dick Publishing, Swinging Headhunter, Basic Health Aids, O.R.G.Y., National Climax, Keeping Abreast, P.O.W. Distributors, Xavier Adult Education, Bill Altman, Medical Supply House, Doc Welby Products Corp., Erotica and Mondo Bizarre.↩
3. The corporate tax returns Form 1120S for Ramit Distributors, Inc., for calendar years 1977 and 1978, are summarized as follows: ↩
1977
1978
Gross receipts
$347,629 $272,602 Cost of goods sold
( 65,204)
( 59,473)
Other deductions
(285,292)
(212,908)
Taxable income
( 2,867)
221 4. For 1977 and 1978 petitioners' returns reflected two Schedule Cs, one for Melvin Cooper and one for Selma Cooper. The total of both Schedule Cs for 1977 and 1978 was $26,000 each year.↩
5. ↩
1977
1978
Undistributed taxable income (loss) per returns
($2,867)
$221
Add: Sales
53,991 50,559
Commission expense
10,400 10,400
Undistributed taxable income as corrected
61,524 61,180
Your corrected distributive share
61,524 61,180
Amount reported on your return
( 2,867)
221
Increase in taxable income
64,391 60,959